IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Action No. 00-cr-00322-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HASSAN ZAGHMOT,

    Defendant.

---

## ORDER

---

    This matter is before the Court on the Motion for Release of Lien [Docket No. 90] filed by petitioner Elfadil A. Azrag. The government filed a response [Docket No. 97] to the motion on June 19, 2012.

    On July 17, 2000, the government filed a five-count criminal indictment in this case, charging defendant Hassan Zaghmot with manufacturing and distributing controlled substances. Defendant was released on August 9, 2000 on a $100,000 appearance bond secured by real property pledged by petitioner Elfadil A. Azrag, *see* Docket Nos. 12,14, resulting in a lien being placed on Mr. Azrag's property. *See* Docket No. 90-1. In an order dated January 18, 2002 [Docket No. 75], the Court granted defendant's Motion to Leave Jurisdiction to Temporarily Visit Syria [Docket No. 68]. The government objected to permitting defendant to travel to Syria. *See* Docket No. 75 at 1. Mr. Azrag avers that he was never informed that defendant was being permitted to leave the country and that, had he known, he would have revoked the

surety. The Certificate of Service attached to the Court's January 18 order does not include Mr. Azrag, see Docket No. 75, and the government does not dispute the lack of notice.[1]  Defendant never returned from Syria.  In the present motion, Mr. Azrag seeks the release of the lien on his property.

In light of defendant's violation of his bond conditions, the government "requests an order of forfeiture pursuant to Ru[l]e 46(f)(1) and (3)."  Docket No. 97 at 2, ¶ 6.  That request, however, comes nearly ten years after defendant's violation of his bail conditions and, therefore, is likely untimely.  The government directs the Court to *United States v. Toro*, 981 F.2d 1045 (9th Cir. 1992), where the government sought to have bail forfeited more than six years after defendant's violation of the conditions of his release.  The *Toro* court concluded that the government's right to seek a bail forfeiture pursuant to Fed. R. Civ. P. 46 was a civil action subject to the statute of limitations found in 28 U.S.C. § 2415.  *See id.* at 1047.[2]  Section 2415 provides in pertinent part that "every action for money damages brought by the United States . . . which is

---

[1] Nor is there any indication that Mr. Azrag was aware of defendant's motion or of the January 4 and January 18, 2002 hearings on the motions.

[2] The government argues that Rule 46 "would appear to impose a duty on the Court to declare the bond forfeit[ed] due to [defendant's] breach of the conditions of bond."  Docket No. 97 at 2, ¶ 6; *see* Fed. R. Crim. P. 46(f)(1) ("The court must declare the bail forfeited if a condition of the bond is breached.").  The government does not take, and the Court would reject, the position that the Court's failure to declare the bail forfeited somehow tolls any applicable statute of limitations.  *See Toro*, 981 F.2d at 1048-49 (rejecting the argument that the statute of limitations does not begin to run until the court declares the bail forfeited); *cf. id.* at 1048 ("The government appears to blame the district court for the government's own failure to seek relief . . . .  However, the Rule is silent as to when the trial court must declare a forfeiture."); *United States v. Navarrete-Martinez*, 776 F.2d 887, 888 (10th Cir. 1985) (interpreting the predecessor version of Rule 46(f)(1) and concluding that "[n]othing in the rule . . . requires the trial court to declare a forfeiture immediately upon the defendant's failure to appear").

founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." There is reason to believe the Tenth Circuit would apply the same limitations period to the government's request for bail forfeiture in this case. *Cf. United States v. Brouillet*, 736 F.2d 1414, 1415 (10th Cir. 1984) (holding that, because a "'bail bond is a contract between the government and the defendant and his surety'" and "'[u]pon forfeiture, the surety becomes the government's debtor,'" "the time for appeal from an order relating to the forfeiture of a criminal bail bond is governed by the rules for appeals from a civil case").[3]

Pursuant to Fed. R. Crim. P. 46(f)(2)(B), the Court would not require Mr. Azrag to be responsible on the surety in any event. Rule 46(f)(2)B) permits the Court to set aside a bail forfeiture where "it appears that justice does not require bail forfeiture." There is no indication in the present record that Mr. Azrag received any notice that the Court was permitting defendant to leave the country. "[F]orfeiture for breach of a condition imposed by the court without notice has been reversed." *United States v.*

---

[3]In the event the government's request could be construed as implicating 28 U.S.C. § 2462, which imposes a five-year limitations period on "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," it would also be untimely. *Cf. Johnson v. Securities and Exchange Comm'n*, 87 F.3d 484, 488 (D.C. Cir. 1996) ("In many other situations the courts have reaffirmed that a sanction which only remedies the damage caused by the defendant does not trigger the protections of § 2462.") (citing, *inter alia*, *Peerless Casualty Co. v. United States*, 344 F.2d 495, 496 (D.C. Cir. 1964), for the proposition that "government could maintain action for forfeiture of bail bond even after five years, because such action was essentially just 'a proceeding upon the breach of a condition of a contract'"); *United States v. Stathakis*, 2007 WL 3124703, at *3 (E.D.N.Y. Oct. 24, 2007) ("Bond forfeiture is regarded as a form of liquidated damages."); *United States v. Garcia-Trevino*, 843 F. Supp. 1134, 1135 (S.D. Tex. 1994) ("[T]he entry of a civil judgment forfeiting a bond for failure to appear at trial solely serves a remedial purpose, not punishment of the defendant[.]").

*Stathakis*, 2007 WL 3124703, at *5 (E.D.N.Y. Oct. 24, 2007) (citing *United States v. LePicard*, 723 F.2d 663, 665-66 (9th Cir. 1984)). As the Seventh Circuit stated in *United States v. King*, "[w]hen a defendant proposes any material change in the conditions of a bond that has been underwritten by sureties, [the sureties] are entitled to notice and an opportunity to be heard – and to revoke their commitments if the judge alters the terms of release over their opposition." 349 F.3d 964, 966 (7th Cir. 2003) ("If the defendant fails to notify the sureties, the prosecutor should do so; and if both sides fail to protect the sureties' entitlement, then the judge should ensure that notice is given.").[4] Furthermore, here the specific risk created by the changed bail condition was realized upon defendant's failure to return from Syria. *See King*, 349 F.3d at 967 ("It is necessary to ask whether the incremental risk came to pass.").[5] Under such

---

[4] In the present case, the government objected to defendant's request for leave to travel to Syria, but does not argue that its objection is sufficient to render Mr. Azrag still responsible on the surety. *See King*, 349 F.3d at 967 ("The prosecutor contends that, because the United States opposed the return of King's passport, while the prosecutor in Gambino agreed to the change in conditions of release, the sureties must continue to stand behind King's appearance. We do not think that it can matter who favored the change; sureties' obligation rests on contract, so the right question to ask is what risk they agreed to accept.").

[5] The *King* court concluded that the sureties were still responsible on the surety, but in so finding highlighted why Mr. Azrag should not be:
> Suppose that the district court had released King on condition that he remain at home, with electronic monitoring of his movements. If the judge later permitted King to travel to New Orleans for a conference, that would have increased the sureties' risk; and if he had failed to return to Illinois, the realization of that risk would have made it inappropriate to collect from the sureties. Now suppose, however, that King did return and was again required to remain home with electronic monitoring. If he sawed off the ankle bracelet and bolted for parts unknown, the sureties would remain liable-for that form of flight would have been exactly the risk they took. The authorized trip would not have played a role. One can say much the same about the actual events. The judge authorized King to travel to Nigeria, and

circumstances, the Court concludes that "justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(B); *see United States v. Lantigua-Almonte*, 2008 WL 5491272, at *5 (E.D.N.Y. Dec. 10, 2008) (concluding that one of "several reasons . . . that justice does not require" forfeiting a bond was that it was "at least arguable that [the surety] is no longer bound as a surety because the conditions of [defendant's] release were changed without [the surety's] knowledge or consent to continue as a surety").[6]

For the foregoing reasons, it is

**ORDERED** that the Motion for Release of Lien [Docket No. 90] filed by petitioner Elfadil A. Azrag is GRANTED. The government's lien on petitioner's property located at 1311 South Victor Street in Aurora, Colorado 80012 shall be released. It is further

**ORDERED** that the identical motions filed by petitioner in related criminal matters [Docket No. 73 in No. 00-cr-00323-PAB, Docket No. 120 in No. 00-cr-00324-PAB, Docket No. 113 in No. 00-cr-00325-PAB, Docket No. 246 in No. 00-cr-00326-PAB, and Docket No. 220 in No. 00-cr-00327] are GRANTED. This order shall be

---

had he stayed there the sureties would have had a good defense to payment. He did not remain abroad, however; King returned to New York (where the original bond allowed him to reside) and only then vanished. The risk of that disappearance is exactly the one these sureties voluntarily took.

349 F.3d at 967 (citation and emphases omitted).

[6] *See Stathatkis*, 2007 WL 3124703, at *10 ("Upon examination of the evidence on record, it appears that the condition violated by the defendant was added as a material modification of the Bond, one that increased the sureties' risk. A surety's notice and consent are required before such conditions are binding upon him or her. Failure to provide notice and consent to the surety can result in the surety being relieved of its obligation on the bond. Since the evidence on record indicates that Zapas was not given notice of and did not consent to the newly added condition, the Court finds relief from the obligations on the Bond is appropriate.") (citations omitted).

docketed in each of those cases.

DATED August 9, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge